NOT DESIGNATED FOR PUBLICATION

No. 121,398

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DALE EUGENE AVILA JR.,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; CHERYL A. RIOS, judge. Opinion filed September 25, 2020. Affirmed.

*Hope E. Faflick Reynolds*, of Kansas Appellate Defender Office, for appellant.

*Steven J. Obermeier*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., WARNER, J., and BURGESS, S.J.

PER CURIAM: Dale Eugene Avila Jr. appeals his convictions for various crimes. He asserts the district court erred by denying his request for a mistrial and by not submitting his prior convictions to a jury when calculating his criminal history score. Finding no error, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Avila and his ex-girlfriend, Danielle Mayo, dated for about eight years. They lived together during that time, and in 2013, Mayo gave birth to their daughter. But the

relationship did not last. In the fall of 2015, Mayo took their young daughter and moved in with her parents and sister. And in December, she applied for and received a temporary protection-from-abuse order against Avila.

Avila grew upset that Mayo had taken their daughter away. Between February and July 2016, Avila sent Mayo text and voicemail messages in which he threatened to hurt her and her family. The situation escalated on February 25, when a distraught Avila came to Mayo's house to see his daughter. When Mayo's mother refused to let him in, Avila kicked in the front door and came inside. Mayo's mother tried to overpower him by jumping on his back, but Avila threw her aside and threatened her. He made his way to Mayo's room where he picked up their daughter, grabbed Mayo by the back of the neck, and tried to leave. But when Mayo, her mother, and her sister blocked the front door to stop him from leaving, Avila eventually put down his daughter and left.

Based on this incident and the messages, the State filed 23 charges against Avila: 1 count each of aggravated burglary, domestic battery, endangering a child, battery, and criminal damage to property; 2 counts of stalking; 6 counts of violating a protective order; and 10 counts of criminal threat. The district court granted Avila's motion for acquittal on two counts. The jury then found Avila guilty on nine of the remaining counts—aggravated burglary, domestic battery, criminal damage to property, two counts of stalking, and four counts of criminal threat. The court sentenced him to a controlling term of 130 months' imprisonment. Avila appeals.

DISCUSSION

Avila alleges two instances of error. First, he claims the district court abused its discretion when it denied his motion for a mistrial. Second, he argues the court violated his Sixth and Fourteenth Amendment rights under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), when calculating his criminal history score by

relying on prior convictions that had not been submitted to the jury. We find that neither allegation constitutes grounds for reversal.

Avila's request for a mistrial stemmed from the State's redirect examination of Mayo's mother, who was a witness at trial. In response to a line of questioning from cross-examination—primarily regarding the State's allegations of criminal threat—the prosecutor asked the witness to identify any statements Avila made to his ex-girlfriend in the mother's house. During that testimony, the following exchange took place:

> "A. [By Mayo's mother:] [Avila] was upset. He was very angry and he said things like, 'Why would you keep my daughter from me?' And Danielle explained to him, or tried to, that, you know, there was a protective order because of prior—
> "Q. [By the State:] And we don't—we—
> "A. Can't use that.
> "Q. I'm asking you about what—the statements that he made inside the house.
> "A. Okay. Well—"

Avila's attorney interrupted the exchange at this point, and a bench conference was held in the absence of the jury. During the conference, Avila's attorney stated she was concerned that Mayo's mother had been close to violating the court's in-limine order and that she might do so again. At the time, however, Avila's counsel stated she was "not asking for a mistrial over this," but rather was asking the prosecutor to "take [the witness] out in the hallway and caution her again, to not say anything like that again." The prosecutor indicated that he had already admonished the witness to steer clear of that line of discussion. To avoid drawing further attention to the statement, the court suggested the prosecutor resume questioning, and the trial moved forward.

The witness finished her testimony soon thereafter. Despite her previous statements, Avila's counsel requested a mistrial at the end of witness' testimony,

3

indicating Avila believed the State had violated the court's order. The court took the matter under advisement and indicated it would review the transcript.

The next day, after having consulted the transcript, the court ruled the exchange did not warrant a mistrial. The court found the witness' reference to something "prior" to the protection-from-abuse order did not render the trial unfair. The court reasoned that the protection order had been discussed during the course of the trial, and the existence of a protection order implied that some conduct had justified the order. And the court found that the witness' statement that she "can't use that" similarly did not undermine the fairness of the trial.

Under K.S.A. 22-3423(1)(c), a district court may declare a mistrial when "[p]rejudicial conduct . . . makes it impossible to proceed with the trial without injustice to either the defendant or the prosecution." Our Kansas Supreme Court has explained that district courts engage in a two-step process when deciding whether to declare a mistrial. (1) The court must determine whether a fundamental failure occurred in the proceeding; if so, (2) the court must assess whether the trial can continue without injustice. *State v. Ward*, 292 Kan. 541, Syl. ¶ 1, 256 P.3d 801 (2011). In some instances, a limiting instruction or jury instruction may lessen or cure the prejudice that occurred. But if such steps would be ineffective, the court must decide whether the conduct is such that it results in injustice—that is, whether the conduct deprived the parties of a fair trial. *State v. Armstrong*, 299 Kan. 405, 442, 324 P.3d 1052 (2014); *Ward*, 292 Kan. 541, Syl. ¶ 1.

Both assessments involve the exercise of the district court's discretion. Thus, appellate courts review the denial of a motion for a mistrial for an abuse of discretion. 292 Kan. at 550-51. A court abuses its discretion when no reasonable person would adopt the court's decision. 292 Kan. at 550.

4

Avila contends the statements by Mayo's mother constituted a fundamental failure in the proceedings because they suggested that some conduct, which should not be disclosed to the jury, gave rise to the temporary protection from abuse order. This could have led the jury to convict Avila based on his past conduct.

The district court's ruling—that the witness' statements did not "make[] it impossible to proceed with the trial without injustice" to Avila under K.S.A. 22-3423(1)(c)—was well within its discretion. Though the district court had ruled the State could not elicit testimony about some of Avila's previous actions, the State did not do so. The witness' reference to the protection-from-abuse order did not run afoul of the court's direction; in fact, evidence of the existence of that protection was necessary to prove the State's charge that Avila violated the order. And as the court noted, the existence of that order supports an inference that Avila previously committed some act that gave rise to its issuance.

Nor did the witness' use of the word "prior" or her statement that she "can't use that [description of Avila's previous action]" so undermine the fairness of the proceedings to necessitate a mistrial. A party may refrain from introducing evidence for several reasons, such as for strategic purposes or pursuant to a court order. The district court's careful consideration of this issue—taking the request for a mistrial under advisement and reviewing the transcript—demonstrates that it handled the matter reasonably. Indeed, we note that Avila initially believed that the witness' statements could be addressed and corrected without a mistrial; this is the very path the court followed. The court did not abuse its discretion when it denied Avila's request for a mistrial.

Avila next argues the court violated *Apprendi* when it relied on his prior convictions to calculate his criminal history score because the State failed to prove these prior convictions beyond a reasonable doubt to a jury. In *Apprendi*, the United States Supreme Court held that any fact, other than a prior conviction, that increases a

5

defendant's sentence beyond the maximum statutory penalty must be submitted and proved beyond a reasonable doubt to a jury. 530 U.S. at 490. The Kansas Supreme Court has held that a district court's use of prior convictions when calculating a criminal history score does not violate *Apprendi*. *State v. Ivory*, 273 Kan. 44, Syl., 41 P.3d 781 (2002); see also *State v. Boysaw*, 309 Kan. 526, 543, 439 P.3d 909 (2019) (declining to reconsider *Ivory*).

This court is obligated to follow Kansas Supreme Court precedent unless there is some indication that the court is departing from its position. *State v. Rodriguez*, 305 Kan. 1139, 1144, 390 P.3d 903 (2017). Avila has not shown the court intends to abandon its position in *Ivory*. Absent that indication, the district court did not err by failing to submit Avila's prior convictions to a jury when calculating his criminal history score.

Affirmed.